UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA

      -against-                            OPINION

GREGORY MARTIN,                    05 Cr. 24 (MGC)

             Defendant.

----------------------------------X

CEDARBAUM, J.

Defendant Gregory Martin moves to dismiss the indictment against him for conspiracy to commit wire fraud and wire fraud. For the reasons that follow, the motion is denied.

## BACKGROUND

Martin, together with defendants David Appelbaum and Rene Poulin, is charged with wire fraud under 18 U.S.C. § 1343 and with conspiracy to commit wire fraud. The indictment alleges that the defendants "devised and effectuated a scheme to fix a horse race by giving a racehorse a performance-enhancing substance, and then profit from their actions by placing bets on that racehorse to win a horse race."

Martin moves to dismiss both counts of the indictment on the ground that the acts that the defendants allegedly conspired to undertake do not constitute wire fraud. Martin argues that the scheme defendants allegedly devised was not a "scheme to defraud," within the meaning of the wire fraud statute, and that

1

the use of the wires allegedly contemplated by the conspirators was not in furtherance of such a scheme.  Martin also argues that the substantive wire fraud charge must be dismissed because the indictment does not allege that Martin had the requisite fraudulent intent to commit wire fraud and does not allege that Martin used the wires.  Furthermore, Martin contends, the indictment does not allege sufficient facts to establish a basis for venue in the Southern District of New York for either charge.  Martin also seeks an order releasing the grand jury minutes and for a bill of particulars.

DISCUSSION

I. Conspiracy to Commit Wire Fraud

To the extent that Martin moves to dismiss the indictment because it fails to charge him with a crime, analysis of his claim is limited to an examination of the face of the indictment.  "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998)(quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).

To charge Martin with the crime of conspiracy to commit wire fraud, the indictment must allege that Martin "agreed with

2

another to commit the offense" of wire fraud; "that he knowingly engaged in the conspiracy with the specific intent to commit [wire fraud]; and that an overt act in furtherance of the conspiracy was committed." United States v. Monaco, 194 F.3d 381, 386 (2d Cir. 1999). Martin argues that the indictment fails to charge conspiracy to commit wire fraud because the acts that the defendants allegedly conspired to commit do not constitute wire fraud.

The wire fraud statute, 18 U.S.C. § 1343, provides that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

The "essential elements of a mail [or wire] fraud violation are (1) a scheme to defraud, (2) money or property [as the object of the scheme], and (3) use of the mails [or wires] to further the scheme." Fountain v. United States, 357 F.3d 250, 255 (2d Cir. 2004)(alterations in original)(quoting United States v. Dinome, 86 F.3d 277, 283 (2d Cir. 1996)).

### A. Scheme to Defraud

Martin first argues that the scheme to dope a horse, which he allegedly conspired to devise, is not a "scheme to defraud"

within the meaning of the wire fraud statute because the scheme did not involve any misrepresentations or fraudulent omissions. However, a misrepresentation or omission is not a necessary element of a "scheme to defraud" under the wire fraud statute. As the Second Circuit determined in United States v. Trapilo, 130 F.3d 547 (2d Cir. 1997), in dismissing defendants' argument that smuggling is not an act within the meaning of a "scheme to defraud," the meaning of "scheme to defraud" is "measured by a nontechnical standard. It is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general [and] business life of members of society." Id. at 550 n.3 (internal quotations and citations omitted). The court held that the allegation that defendants engaged in smuggling "without an allegation of misrepresentation or deceit" was sufficient to allege a "scheme to defraud" under the wire fraud statute. Id. ("Because the act of smuggling violates fundamental notions of honesty, fair play and right dealing, it is an act within the meaning of a 'scheme to defraud.'"); see also A. Terzi Prods., Inc. v. Theatrical Protective Union, 2 F. Supp. 2d 485, 501 (S.D.N.Y. 1998)("I read Trapilo as underscoring the accepted notion that a defendant, by his conduct alone, can intend to deceive another and engage in a scheme to defraud, even though the defendant's statements themselves contain no misrepresentations. Smuggling is the perfect example of such

4

conduct because, while smuggling might involve no statement at all, its sole purpose is to conceal what the smuggler is carrying; it is thus inherently a dishonest and deceptive act."). Like the scheme in Trapilo, Martin and his codefendants' scheme did not involve any affirmative misrepresentations. However, breaking the rules of the horserace by doping a horse, like smuggling, violates fundamental notions of honesty, fair play and right dealing and is therefore an act within the meaning of a "scheme to defraud."

Martin also argues that the scheme that the indictment alleges is not a "scheme to defraud" within the meaning of the wire fraud statute because the scheme was not devised with the requisite fraudulent intent. "Essential to a scheme to defraud is fraudulent intent." United States v. D'Amato, 39 F.3d 1249, 1257 (2d Cir. 1994). To establish intent, "the government must 'prove that defendants contemplated some actual harm or injury to their victims. Only a showing of *intended harm* will satisfy the element of fraudulent intent.'" United States v. Gabriel, 125 F.3d 89, 96 (2d Cir. 1997) (quoting United States v. Starr, 816 F.2d 94, 98 (2d Cir. 1987)).

However, the sufficiency of the government's evidence of the conspirators' fraudulent intent is not considered on a motion to dismiss the indictment. In order to charge a crime, an indictment need only track the language of the statute alleged to

5

have been violated and, if necessary, state the time and place of the offense in approximate terms. United States v. Flaharty, 295 F.3d 182, 198 (2d Cir. 2002). Here, the indictment tracks the language of the wire fraud statute and states that the two parts of the alleged "scheme to defraud" were: (1) "to fix a horserace by giving a racehorse a performance-enhancing substance," and then (2) to "profit" from the doping "by placing bets on that racehorse to win a horse race." The defendants could have succeeded in profiting from the scheme only if the bets placed on the doped horse paid out, which necessarily required that those betting on the non-doped horses lose their wagers. The defendants' intent to injure those betting on the non-doped horses may be inferred from the fact that monetary harm to those betting on the non-doped horses was the necessary consequence of the success of their scheme. The indictment therefore charges that the defendants conspired to devise a "scheme to defraud," within the meaning of the wire fraud statute. Whether this scheme and the defendants' intent to harm those betting on the non-doped horses can be proved at trial cannot be determined from the face of the indictment.

### B. Deprivation of Money or Property

The wire fraud statute also requires that money or property be the object of the defendant's "scheme to defraud." Fountain v. United States, 357 F.3d 250, 255 (2d Cir. 2004). Martin

6

argues that the indictment does not charge conspiracy to commit wire fraud because the alleged "scheme to defraud" did not have money or property as its object. In this case, the only commodities that are alleged to have been the objects of the fraud and that could have been diminished in value by the fraud are the wagers placed on the non-doped horses.

Although Martin cites the decision of the New York Court of Appeals in People v. Kramer, 92 N.Y.2d 529 (1998), in support of his argument that wagered money is not "property," the Kramer opinion does not address whether a wager is property under New York law. The Sixth Circuit, however, has held that a bettor's contract rights arising from the placement of a legal wager are "property." The court stated that:

> Where gambling is lawful, as it was in the case at bar, the placing of a bet gives rise to legally enforceable contract rights. These contract rights constitute "property," of course, and at the time which Collier[, the author of the treatise Collier on Bankruptcy,] identifies as "critical"--a time before anyone can know whether the bet will be successful--the property has economic value. The property is not unlike futures contracts purchased on margin. The investor in futures may win big, or his position may be wiped out, but the contractual right to a payoff if the market happens to move the right way at the right time constitutes a value reasonably equivalent to the money at risk.

In re Chomakos, 69 F.3d 769, 771 (6th Cir. 1995)(evaluating whether a wager was a "fraudulent conveyance" under the Bankruptcy Code or the Uniform Fraudulent Conveyance Act and holding that there was a reasonable equivalence between the

7

economic value of a gambling bet and the value of the money wagered, such that property transfer could not be undone by bankruptcy trustee as a fraudulent conveyance).

Prior to the horserace, the doping activity charged in the indictment arguably lowered the probability that any of the non-doped horses would win and that the bets placed on the non-doped horses would pay out, and thereby decreased the value of every wager placed on a non-doped horse. Thus, it is arguable that all those betting on the non-doped horses were deprived of the value of their wagers by the charged scheme to dope a horse. Accordingly, the indictment is not deficient on its face for failure to allege that property was the object of the fraudulent scheme.

### C. Use of Wires in Furtherance of the Scheme

Finally, to commit wire fraud conspiracy, a defendant must conspire to use the wires in furtherance of the scheme to defraud. Fountain v. United States, 357 F.3d 250, 255 (2d Cir. 2004). The use of the wires need not be an essential part of the scheme to defraud, but must be at least "incident to an essential part of the scheme." United States v. Altman, 48 F.3d 96, 102 (2d Cir. 1995)(emphasis omitted)(discussing mail fraud statute). Martin argues that the indictment fails to allege that the use of the wires contemplated by the conspirators was in furtherance of the scheme to defraud. The only use of the wires that is alleged

in the indictment was by Martin's codefendant, David Appelbaum, to place bets and to invite others to bet on the doped horse. Martin contends that placing bets and inviting others to place bets on a particular horse in a horserace was not incident to an essential part of the scheme to defraud charged in the indictment. Therefore, Martin argues, the conspiracy charge must be dismissed for failure to allege that the defendants conspired to use the wires in furtherance of the fraudulent scheme.

For the purpose of this motion, I must accept as true all facts alleged in the indictment. Arguments that the government cannot prove elements of the crimes charged are not appropriate grounds for dismissing an indictment on its face. In this case, the indictment alleges that the scheme to defraud had two parts: "to fix a horserace by giving a racehorse a performance-enhancing substance, and then to "profit" from the doping "by placing bets on that racehorse to win a horse race." Although the alleged use of the wires did not further the doping portion of the scheme, this use was arguably in furtherance of the alleged profiting part of the scheme. The indictment therefore is not deficient for failure to allege that the defendants conspired to use the wires in furtherance of their fraudulent scheme.[1] Martin's motion to dismiss may be renewed at the end of the government's

---

[1] Martin also asserts on information and belief that none of Appelbaum's calls were made interstate. However, the government represents that three of the telephone calls alleged in the indictment were made by David Appelbaum from New York to out-of-state locations.

case if the government fails to prove that he conspired to do more than dope the racehorse.

## IV. Substantive Wire Fraud

Martin also moves to dismiss the substantive wire fraud charge in the indictment. Martin argues that the indictment fails to allege facts to prove that he had the requisite fraudulent intent to injure those betting on the non-doped horses and fails to allege that he used the wires in furtherance of the "scheme to defraud."

The government argues that, although Martin did not place bets on the doped horse or use the wires to further the scheme, he may be held liable for substantive wire fraud because he aided and abetted David Appelbaum's wire fraud. The indictment need not allege that Martin bet on the doped horse or used the wires in order to charge Martin with wire fraud under the theory that he acted as an aider and abettor. The indictment need only allege that someone other than the defendant committed wire fraud and that the defendant acted "with the specific intent of advancing" the wire fraud. United States v. Pipola, 83 F.3d 556, 562 (2d Cir. 1996). This specific intent "goes beyond the mere knowledge that the defendant's action would tend to advance some nefarious purpose of the principal. Rather, the defendant must act with the specific intent of facilitating or advancing the principal's commission of the underlying crime." United States

v. Frampton, 382 F.3d 213, 223 (2d Cir. 2004). It is not necessary that the defendant participate in every phase of the criminal venture or have a stake in its outcome. United States v. Tejada, 956 F.2d 1256, 1265 (2d Cir. 1992). Nor is it necessary that the indictment state how the defendant aided and abetted the commission of the offense. Coffin v. United States, 156 U.S. 432, 448 (1895).

In this case, although the indictment does not allege that Martin placed bets on the doped horse or used the wires, it does allege that David Appelbaum placed bets over the wires. It also alleges that Martin conspired with Appelbaum to commit wire fraud and then doped a horse. Martin's specific intent to advance Appelbaum's wire fraud through the act of doping the horse may be inferred from Martin's alleged participation in the wire fraud conspiracy. The indictment, therefore, states a charge against Martin for substantive wire fraud.

## V. Venue

Martin argues that the indictment fails to allege sufficient facts to establish that venue for either charge against him lies in the Southern District of New York. The government has conceded that none of Martin's acts took place in the Southern District of New York. Martin lives in the Eastern District of New York, and the alleged doping occurred at a racetrack in the Eastern District. Venue is entirely based on the acts of

Martin's codefendants, including David Appelbaum. Although Martin asserts, on information and belief, that none of the telephone calls made by his codefendants originated or terminated in the Southern District, the government represents that several of the telephone calls that Appelbaum made in furtherance of the fraudulent scheme originated or terminated in the Southern District, specifically in Westchester. See United States v. Kim, 246 F.3d 186, 191 (2d Cir. 2001)(affirming district court holding that the "act of causing a wire to be transmitted" in furtherance of a fraud is criminalized by the wire fraud statute, that a wire is "transmitted" both where it was sent and where it was received, and that venue was therefore appropriate in the Southern District where defendant "caused" communications to be transmitted into and out of the Southern District). Wire fraud is a "continuing offense" that, under 18 U.S.C. § 3237(a), may be "prosecuted in any district in which such offense was begun, continued, or completed."

For the conspiracy charge, "venue is proper in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators." United States v. Geibel, 369 F.3d 682, 696 (2d Cir. 2004). Thus, venue for the conspiracy count lies in the Southern District based on the government's representation that Martin's alleged coconspirator

12

and principal David Appelbaum made telephone calls transmitted either to or from the Southern District of New York.

For the substantive wire fraud charge, Martin argues that venue does not lie in this district because there is no indication that Martin knew or had reason to know that any alleged coconspirator was engaging in any activity in furtherance of the conspiracy in this district. However, the foreseeability of Appelbaum's conduct has no bearing on venue. United States v. Smith, 198 F.3d 377, 383 (2d Cir. 1999)(holding that even if an aider and abettor committed all of his accessorial acts in the Eastern District of New York, he "nevertheless would be triable in the Southern District because 18 U.S.C. § 2 alters the common law rule to provide for an additional venue" in the district where the principal acted). Accordingly, venue for the substantive wire fraud charge also lies in this district based on the acts of the principal, David Appelbaum.

## VI. Other Requested Relief

Martin also moves for disclosure of the grand jury minutes and for a bill of particulars. However, Martin has failed to make a showing of "particularized need" as is required under Fed. R. Crim. P. 6(e)(3)(E)(ii) for disclosure of grand jury materials. United States v. Moten, 582 F.2d 654, 662 (2d Cir. 1978)(noting that the burden is on the party seeking disclosure of grand jury minutes to show a "particularized need" that

13

outweighs the need for secrecy); see also United States v. Dunn, No. 05 Cr. 127(KMK), 2005 WL 1705303, at *3 (S.D.N.Y. Jul. 19, 2005)(holding that defendant's "general and unsubstantiated assertions" of government misconduct were insufficient to meet the "stringent standard" under Rule 6(e)(3)(E)(ii) that defendant has "'a particularized need' for such materials"). Martin has conceded that most of the particulars he requested were provided by the government during oral argument of this motion.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is denied, and his requests for grand jury minutes and a bill of particulars are denied.

SO ORDERED.

Dated:   New York, New York
         January 19, 2006

                                S/_____
                                    MIRIAM GOLDMAN CEDARBAUM
                                    United States District Judge